# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

JOHN NILAJ,

    Plaintiff,

v.                                    Case No. 8:23-cv-2671-WFJ-NHA

MGO LABS, LLC; DO ENTERPRISES, LLC, d/b/a/ 18TH&MAIN; and DANNY ORTEGA,

    Defendants.
_____/

## ORDER

Before the Court is Plaintiff John Nilaj's Motion for Default Judgment against Defendants MGO Labs, LLC ("MGO"), DO Enterprises, LLC ("DO Enterprises"), and Danny Ortega (Dkt. 66), as well as Mr. Nilaj's separate Motion for Default Judgment against Mr. Ortega in his individual capacity (Dkt. 71). Upon careful consideration, the Court grants-in-part and denies-in-part the Motions.

## BACKGROUND

MGO and DO Enterprises (collectively, the "Corporate Defendants") are Florida Limited Liability Companies owned and operated by Mr. Ortega. Dkt. 44 at 2–4. It is not clear what they do, how many people they employ, or how much money they generate. *See id.* at 1–16. Notwithstanding, on April 20, 2023, Mr.

Nilaj purportedly began working for both of them, as well as for Mr. Ortega, "in an office management and personal secretarial capacity." *Id.* at 5, 22.

On June 7, 2023, Mr. Nilaj signed a written employment agreement with DO Enterprises and Mr. Garcia (the "Employment Agreement"). *Id.* at 42–44. The Employment Agreement provided for a "Part-Time position of Front Desk Reception with the potential to be Full-Time in the upcoming months." *Id.* "In consideration of [his] services," Mr. Nilaj was to receive "$15 hourly." *Id.* at 42.

Unfortunately, it appears that Mr. Nilaj was never paid his wages—even after entering into the Employment Agreement. Between April 20, 2023, and September 14, 2023, Mr. Nilaj allegedly worked 795.5 hours, including 91 hours of overtime, without compensation. *Id.* at 22–26. Mr. Nilaj further maintains that Defendants withheld promised bonuses worth $600.00 and refused to reimburse $965.72 in work-related expenditures. *Id.* at 7.

On September 2, 2023, Mr. Nilaj entered into a written equity agreement with DO Enterprises (the "Ownership Agreement"). *Id.* at 28–34. Thereunder, Mr. Nilaj received 2% ownership of DO Enterprises in recognition of an earlier $10,000 contribution he gave to Mr. Ortega. *Id.* at 28–29. Mr. Nilaj was seventeen years old at the time the Ownership Agreement was executed. *Id.* at 11. He was presumably sixteen or seventeen at the time he gave $10,000 to Mr. Ortega. *Id.* at 37.

Around September 14, 2023, Mr. Nilaj quit working for Defendants and hired an attorney. He subsequently disaffirmed the Ownership Agreement with written notice, *id.* at 36–40, and brought suit, *see* Dkt. 1.

Mr. Nilaj filed his Second Amended Complaint (the "SAC") on February 27, 2024. Dkt. 44. He asserts five claims: Count I—violation of the Fair Labor Standards Act ("FLSA"); Count II—violation of Florida's Minimum Wage Act ("FMWA"); Count III—recission of the Ownership Agreement; Count IV—breach of the Employment Agreement; and Count V—unjust enrichment. *Id.* at 9–16. While Counts IV and V apparently focus on DO Enterprises and Danny Ortega, it is not entirely clear towards whom Counts I–III are directed. *Id.*

Despite earlier participation in the instant lawsuit, Defendants never answered the SAC. And, on March 11, 2024, the Court granted three motions to withdraw filed by Defendants' former attorneys. Dkt. 54. The Corporate Defendants have not retained new counsel, and Mr. Ortega has not filed a notice of his intention to proceed *pro se*. Accordingly, on May 20, 2024, a Clerk's Default was entered against the Corporate Defendants. Dkt. 62. A second Clerk's Default was entered against Mr. Ortega less than one month later. Dkt. 69.

Mr. Nilaj now moves for default judgment against all Defendants. Dkts. 66; 71. In addition, Mr. Nilaj's attorney requests over $40,000 in fees and costs. Dkt. 66 at 45–47.

3

## LEGAL STANDARD

"The effect of the entry of a default is that all of the factual allegations in the [c]omplaint are taken as true, save for the amount of unspecified damages." *Whole Space Indus., Ltd. v. Gulfcoast Int'l Prod., Inc.*, No. 209-CV-217-UA-SPC, 2009 WL 2151309, at *3 (M.D. Fla. July 13, 2009) (citation omitted). Accordingly, "if liability is well-pled in the complaint, it is established by the entry of a default." *Id.*

"Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default[.]" *Id.* Instead, "the Court determines the amount and character of damages to be awarded." *Id.* Damages may be awarded without an evidentiary hearing if the amount is a liquidated sum or capable of calculation. *See* Fed. R. Civ. P 55(b)(1); *SEC v. Smyth*, 420 F.3d 1225, 1231 (11th Cir. 2005) (collecting cases).

## DISCUSSION

The Court will address liability before turning to damages, fees, and costs.

I. **Liability**

    a. **FLSA (Count I)**

To prevail on a minimum wage or overtime compensation claim under the FLSA, a plaintiff must establish individual coverage or enterprise coverage. *See Holland v. Westside Sportsbar & Lounge, Inc.*, No. 6:19-CV-945-ORL-41GJK, 2020 WL 7390724, at *2 (M.D. Fla. Oct. 13, 2020), *report and recommendation*

*adopted*, No. 6:19-CV-945-ORL-41GJK, 2020 WL 7390683 (M.D. Fla. Nov. 4, 2020) (discussing coverage in the minimum wage context); *see also Joseph v. Nichell's Caribbean Cuisine, Inc.*, 862 F. Supp. 2d 1309, 1313–14 (S.D. Fla. 2012), *as amended* (July 17, 2012) (discussing coverage in the overtime context). Enterprise coverage is established where the defendant is an enterprise engaged in commerce or in the production of goods for commerce such that it:

> [1] has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . [2] is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)[.]

29 U.S.C. § 203(s)(1)(A)(i)–(ii). Individual coverage is established where the plaintiff is (or was) directly "participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce . . . or (ii) by regularly using the instrumentalities of interstate commerce in his work, *e.g.,* regular and recurrent use of interstate telephone, telegraph, mails, or travel." *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006).

Mr. Nilaj has not demonstrated enterprise coverage. It is well established that "[d]istrict courts cannot presume for enterprise coverage . . . that the employer grosses over $500,000 annually." *De Lotta v. Dezenzo's Italian Rest., Inc.*, No.

5

6:08CV2033ORL22KRS, 2009 WL 4349806, at *2 (M.D. Fla. Nov. 24, 2009) (citing *Sandoval v. Fla. Paradise Lawn Maint., Inc.,* 303 Fed. App'x. 802, 805 (11th Cir. 2008)). This, however, is exactly what Mr. Nilaj asks the Court to do. He has failed to assert any factual allegations in the SAC concerning Defendants' annual gross volume of sales made or business done. *See generally* Dkt. 44. And the Court cannot fill in the blanks based on Mr. Nilaj's conclusory statement that he was "employed by an enterprise engaged in commerce or in the production of goods for commerce." Dkt. 66 at 8; *see Cloer v. Green Mountain Specialties Corp*, No. 6:18-CV-999-ORL-40-KRS, 2019 WL 568358, at *1 (M.D. Fla. Jan. 2, 2019) (finding that, "[w]ithout factual allegations sufficient to establish either individual or enterprise coverage, the complaint cannot support entry of a default judgment").

This leaves individual coverage. On this point, Mr. Nilaj offers the following factual allegations:

> During the respective periods of Plaintiff's employment by Defendants, Plaintiff was engaged in membership sales; making and receiving phone calls; tours of Defendants' establishment; cleaning and organizing the premises; maintenance of equipment; scheduling services; door-to-door marketing; social media marketing; restocking supplies; ordering, unloading, or receiving materials purchased by Defendant employer(s) from outside the state; document drafting; office management; personnel training; and Defendant, Danny Ortega's, personal assistant.

Dkt. 44 at 5–6. Even accepted as true, these factual allegations alone cannot establish individual coverage as a matter of law under the FLSA.

"The Supreme Court has articulated that it is the intent of Congress [in the FLSA] to regulate only activities constituting interstate commerce, not activities merely affecting commerce." *Thorne*, 448 F.3d at 1266 (citing *McLeod v. Threlkeld*, 319 U.S. 491, 497 (1943). Accordingly, "'a substantial part of [Mr. Nilaj's] work' must be the engagement in interstate commerce for [him] to successfully invoke individual coverage." *Joseph*, 862 F. Supp. 2d at 1312 (quoting *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 572 (1943)). Mr. Nilaj, in other words, must have directly participated in the movement of persons or goods in interstate commerce or *regularly and recurrently* used the instrumentalities of interstate commerce in his work. *Thorne*, 448 F.3d at 1266.

Mr. Nilaj has demonstrated neither of these things. As an initial matter, the SAC leaves the Court with no understanding of Defendants' business. It is not clear what they do, whether they serve non-local clients, what products they work with or offer, how much revenue they generate, or whether they participate in interstate commerce beyond ordering out of state "materials."

Mr. Nilaj's Motions for Default Judgment follow this trend. Indeed, beyond citing to the factually deficient SAC, they state nothing about Defendants' business except the indirect legal conclusion that Mr. Nilaj "was engaged in commerce or production of good for commerce or employed by an enterprise engaged in commerce or in the production of goods for commerce." Dkt. 66 at 8; Dkt. 71 at 7.

7

This lack of factual information makes it impossible to contextualize the aforementioned list of job duties provided by Mr. Nilaj. Consider, for instance, Mr. Nilaj's allegation that he "order[ed], unload[ed], or receiv[ed] materials purchased by Defendant employer(s) from outside the state." Dkt. 44 at 5–6. The Eleventh Circuit distinguishes "between merchants who bring commerce across state lines for sale and the ultimate customer, who merely purchases goods that previously moved in interstate commerce for intrastate use." *Thorne*, 448 F.3d at 1267. With no information about Defendants' use of the goods that Mr. Nilaj was allegedly ordering, the Court cannot determine whether their "interstate journey end[ed]" and thus whether Mr. Nilaj was "mere[ly] engaged in . . . *intrastate* movement of the goods[,]" which is "not covered under the [FLSA]." *Id.* (emphasis in original). Consider, also, Mr. Nilaj's alleged use of the telephone. "It could be that . . . [Mr. Nilaj] only occasionally [or never] contacted out of state" customers or suppliers. *Dent v. Giaimo*, 606 F. Supp. 2d 1357, 1361 (S.D. Fla. 2009). This too would not be covered under the FLSA. Finally, consider Mr. Nilaj's averments concerning social media marketing. Mr. Nilaj does not specify whether Defendants were marketing to non-local customers through him, and the SAC nowhere specifies that Mr. Nilaj was "regularly and recurrently" using social media to "engage[] in interstate commerce." *Dent v. Giaimo*, 606 F. Supp. 2d at 1361.

8

Simply put, Mr. Nilaj has failed to carry his burden of establishing "that [he] [was] engaged in interstate commerce, or in the production of goods, and that such production was for interstate commerce." *See Joseph*, 862 F. Supp. 2d at 1312. There is no FLSA liability for Defendants on the facts alleged.

### b. FMWA (Count III)

To prevail on a claim under the FMWA, a plaintiff must establish the same elements required under the FLSA: (1) "that the plaintiff was employed by an employer covered by the FLSA during the time period involved"; (2) "that the plaintiff was engaged in commerce or production of goods for commerce or employed by an enterprise engaged in commerce or in the production of goods for commerce"; and (3) "that the employer failed to pay the plaintiff the minimum wage and overtime compensation required by law." *Kwasnik v. Charlee Fam. Care Servs. of Cent. Fla., Inc.*, No. 608-CV-926-ORL-31KRS, 2009 WL 1607809, at *4 (M.D. Fla. June 9, 2009). "Here, because the Court finds that [Mr. Nilaj] ha[s] not adduced evidence demonstrating coverage under the FLSA—through either enterprise or individual coverage—the Court finds that [Mr. Nilaj] ha[s] not adduced evidence demonstrating coverage under the FMWA." *Chavez v. Grill Enterprises, LLC*, No. 20-22603-CIV, 2022 WL 1642757, at *10 (S.D. Fla. Jan. 31, 2022). There is consequently no liability under the FMWA either.

### c. Recission (Count III)

"The recission of contract amounts to the unmaking of a contract, or an undoing of it from the beginning, and not merely a termination[.]" *Bland v. Freightliner LLC*, 206 F. Supp. 2d 1202, 1206 (M.D. Fla. 2002) (internal quotations and citation omitted). In Florida:

> [t]he fundamental requirements necessary to state a cause of action for rescission of contract are: (1) the character or relationship of the parties; (2) the making of a contract; (3) the existence of fraud, mutual mistake, false representation, impossibility of performance, or other ground for rescission or cancellation; (4) the party seeking rescission had rescinded the contract and notified the other party to the contract of such rescission; (5) the moving party has received benefits from the contract, he should further allege an offer to restore these benefits to the party furnishing them, if restoration is possible; and (6) the moving party has no adequate remedy at law.

*Id.* (citing *Crown Ice Machine Leasing Co. v. Sam Senter Farms, Inc.,* 174 So.2d 614, 617 (Fla. 2d DCA 1965)). "Generally, contracts with minors are not void but only voidable." *Orange Motors of Miami, Inc. v. Miami Nat. Bank*, 227 So. 2d 717, 718 (Fla. 3rd DCA 1969).

The Court finds that Mr. Nilaj is equitably entitled to recission of the Ownership Agreement. According to the SAC, and its attachments, Mr. Ortega utilized predatory tactics and the ostensible legitimacy of his corporate entities to induce Mr. Nilaj (a minor) into giving him $10,000. Dkt. 44 at 37–38. In recognition of this contribution, a significant portion of which was apparently spent on personal expenses, Mr. Ortega retroactively executed a six page contract

10

with Mr. Nilaj, who was still seventeen years old at the time. *Id.* at 28–33. The Ownership Agreement's six pages is filled with optimistic language and sentiments concerning DO Enterprises' future. *Id.* But nowhere does it explain that Mr. Nilaj was obtaining 2% equity in a company that was apparently months behind on its commercial lease and without any concrete prospects for growth. *Id.* at 37–38. Nor does it explain how Mr. Nilaj's $10,000 was spent. Regardless, upon quitting his employment and getting into contact with his current attorney—which itself occurred after Mr. Ortega had refused to pay Mr. Nilaj wages for months—Mr. Nilaj promptly disavowed the Ownership Agreement. *Id.* at 36–40. Mr. Nilaj has also offered to return any equity he received therefrom.

Given the foregoing facts, which the Court must accept as true, Mr. Nilaj has no adequate remedy at law. The Ownership Agreement was not breached by Mr. Ortega or DO Enterprises because it does not specify how Mr. Nilaj's money was to be used. Additionally, there is no indication that Mr. Nilaj has been denied any other right(s) granted thereunder. Recission or other equitable relief is therefore appropriate. The Court grants Mr. Nilaj default judgment on Count III as to both Mr. Ortega and DO Enterprises.[1]

---

[1] The Court recognizes that the Ownership Agreement is executed between Mr. Nilaj and DO Enterprises, with Mr. Ortega apparently signing on behalf of DO Enterprises. Dkt. 44 at 33. But "equity is flexible[.]" *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 322 (1999). And, "[i]n granting recission, the court should attempt to restore the parties to the status quo." *Braman Dodge, Inc. v. Smith*, 515 So. 2d 1053, 1054 (Fla. 3rd DCA 1987). Here, Mr. Nilaj, while still a minor, gave his money to Mr. Ortega. Dkt. 44 at 38. Mr. Ortega used the

#### d. Breach (Count IV)

In Florida, breach of contract requires: (1) the existence of a valid contract; (2) a breach of that contract; (3) causation; and (4) damages. *Carpenter Contractors of Am., Inc. v. Fastener Corp. of Am.*, 611 So. 2d 564, 565 (Fla. 4th DCA 1992). Mr. Nilaj has adequately alleged all of these elements with respect to the Employment Agreement. The Employment Agreement is a valid employment contract that provides a "$15 hourly" rate for Mr. Nilaj's work for DO Enterprises and Mr. Ortega. Dkt. 44 at 42–44. DO Enterprises and Mr. Ortega breached this covenant by failing to pay Mr. Nilaj any wages after the Employment Agreement was executed. *Id.* at 22–26. This breach, moreover, directly caused Mr. Nilaj damages in the form of monetary loss. The Court grants Mr. Nilaj default judgment on Count IV as to Mr. Ortega and DO Enterprises.

#### e. Unjust Enrichment (Count V)

"A claim for unjust enrichment is often referred to as a quasi-contract, or a contract implied in law." *Doral Collision Ctr., Inc. v. Daimler Tr.*, 341 So. 3d 424, 429 (Fla. 3rd DCA 2022). In order to establish a cause of action for unjust enrichment in Florida, a plaintiff must show that: "(1) [he] has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts

---

money how he wished and used a significant portion for himself. *Id.* Only after the fact did Mr. Ortega create the Ownership Agreement and have Mr. Nilaj sign it. Under these circumstances, the Court finds it equitable to hold Mr. Ortega and DO Enterprises jointly and severally liable.

and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without first paying the value thereof to the plaintiff." *Id.* (internal quotation and citations omitted). "It is well settled that the law will not imply a contract where an express contract exists concerning the same subject matter." *Kovtan v. Frederiksen*, 449 So. 2d 1, 1 (Fla. 2nd DCA 1984).

The Court finds that Mr. Nilaj has asserted a viable unjust enrichment claim with respect to all of the work he performed for Mr. Ortega prior to the execution of the Employment Agreement, as well as for any unpaid bonuses promised by Mr. Ortega. According to the SAC, Mr. Nilaj worked numerous hours for Mr. Ortega and the Corporate Defendants prior to the execution of the Employment Agreement and earned $600 in unpaid but promised bonuses. Dkt. 44 at 22–26. The Defendants voluntarily accepted the benefits of this work without paying Mr. Nilaj. And, under these circumstances, it would be inequitable for them to retain these benefits without paying Mr. Nilaj for his time and effort. The Court grants Mr. Nilaj default judgment on Count V as to all Defendants.

## II. Damages

As previously noted, damages may be awarded on a motion for default judgment without an evidentiary hearing if the amount is a liquidated sum or capable of mathematical calculation. *See* Fed. R. Civ. P 55(b)(1); *SEC*, 420 F.3d at

(collecting cases). Here, the SAC and Mr. Nilaj's sworn affidavit, which itself includes a timesheet, allows the Court to do just that. Dkt. 66 at 18–24.

### a. Recission (Count III)

As previously noted, "[i]n granting recission, the court should attempt to restore the parties to the status quo." *Braman Dodge, Inc.*, 515 So. 2d at 1054. This can be achieved in the instant case by requiring Mr. Ortega and DO Enterprises to return Mr. Nilaj's $10,000 in exchange for any equity that Mr. Nilaj received in DO Enterprises from Mr. Ortega through the Ownership Agreement. The Court therefore orders the same.

### b. Breach and Unjust Enrichment (Counts IV and V)

As previously noted, the Employment Agreement provided that Mr. Nilaj was to be paid $15 an hour for his work. The Court finds this to be a fair hourly rate for the value of Mr. Nilaj's pre-contractual work as well. Accordingly, the Court awards Mr. Nilaj $11,989.58 in damages under Counts IV and V (amount owed for wages at regular rate ($10,222.50) + amount owed for unpaid overtime ($1,842.08) + amount owed for unpaid bonuses ($600.00) – wages paid ($675.00)). *See* Dkt. 66 at 20–23. Mr. Ortega and DO Enterprises are jointly and severally liable for the entirety of these damages for the reasons explained above. MGO is jointly and severally liable for Mr. Nilaj's damages under Count V, which amount to $2,452.50 (unpaid wages from April 20, 2023, to June 7, 2023). *Id.* at 22.

### III. Attorneys' Fees and Costs

In total, Mr. Nilaj's counsel, Mr. George E. Clause II, requests $40,717 in attorneys' fees and $2,314.15 in costs. The Court awards $0.00 in attorneys' fees and $1,630.21 in costs.

#### a. Attorneys' Fees

The general rule "governing the award of attorneys' fees in litigation in the federal courts is that attorneys' fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor." *F. D. Rich Co. v. U. S. for Use of Indus. Lumber Co.*, 417 U.S. 116, 126 (1974) (internal quotations and citation omitted). Here, neither of the subject contracts contain provisions addressing attorneys' fees. And Mr. Nilaj's statutory claims have failed. There is therefore no basis for an award of attorneys' fees.

#### b. Costs

Costs that may be awarded are those explicitly authorized by statute. *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987). Section 1920 authorizes the taxation of the following costs:

> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;

    (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

    (5) Docket fees under section 1923 of this title;

    (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

    To recover costs, the prevailing party must present adequate evidence to enable a court to determine the specific costs incurred. *Loranger v. Stierheim*, 10 F.3d 776, 784 (11th Cir. 1994) (per curiam). Upon a sufficient showing by the prevailing party, the opposing party "must overcome" the strong presumption in favor of awarding costs. *See Mano Healthcare Corp. v. Lomelo*, 929 F.2d 633, 639 (11th Cir. 1991).

    Here, Mr. Clause seeks to tax: (1) $402.00 in filing fees; (2) $321.00 in printing costs; (3) $1,113.30 in deposition transcript costs; (4) $18.61 in service of process costs; (5) $121.58 in mailing costs; and (6) $337.66 in other costs ranging from "[a]ccommodation in Tampa for Hearing" to "[t]hree-ring binder for hearing." Dkt. 66 at 46–47. The Court will address each category in turn.

    *Filing Fees*. Filing fees unquestionably qualify as taxable costs under section 1920(1), and the record shows that Mr. Nilaj paid $402.00 in filing fees in this case. *See* Dkt. 1. The Court consequently grants $402.00 in filing fees.

*Deposition Transcript Costs*. Taxation of deposition costs is authorized by section 1920(2) where the subject depositions were necessarily obtained for use in the case. *See U.S. E.E.O.C.*, 213 F.3d at 620–21. Here, Plaintiff seeks $1,113.30 in deposition costs associated with the deposition of Mr. Ortega. Dkt. 66 at 48. Mr. Ortega is the central defendant in this case and his deposition was vital to Mr. Nilaj's litigation strategy prior to default. Accordingly, the Court awards $1,113.30 in deposition transcript costs.

*Printing/Copy Costs*. Printing and exemplification costs are taxable under section 1920(3)–(4). The Court nevertheless finds that a $0.50 per page printing rate is unreasonable. *See Combs v. Am. Strategic Ins. Corp.*, No. 5:19CV269-TKW-MJF, 2020 WL 13888359, at *2 (N.D. Fla. Dec. 18, 2020) (reducing copy costs to "15 cents per page . . . instead of 50 cents per page"). The Court therefore reduces the rate to $0.15 per page, *id.* at 3, and awards $96.3 in printing/copy costs (642 pages x $0.15).

*Service of Process Costs*. The Eleventh Circuit has held that "private process server fees may be taxed pursuant to §§ 1920(1) and 1921" and that "a district court does not abuse its discretion in taxing private process server fees that do not exceed the statutory fees authorized in § 1921." *U.S. E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 624 (11th Cir. 2000). The statutory rate for service by the United States Marshal—statutory fees authorized in § 1921—is currently $65.00 per hour. *See* 28

17

C.F.R. § 0.114(a)(3). Further, "[t]he Attorney General has advised that the Marshal's Service routinely collects . . . travel costs and any other out-of-pocket expenses." *BMC Bus. Overseas Corp. v. Incasa LLC*, No. 17-24046-CIV, 2019 WL 1897804, at *4 (S.D. Fla. Feb. 15, 2019), *report and recommendation adopted*, No. 17-24046-CIV, 2019 WL 1897678 (S.D. Fla. Feb. 27, 2019). $18.61 in service of process costs is therefore more than reasonable. The Court awards it.

*Other Costs*. The remainder of the costs alleged are unrecoverable, unsupported, or unclear. *Corsair Asset Mgmt., Inc. v. Moskovitz*, 142 F.R.D. 347, 351 (N.D. Ga. 1992) (finding that, "[b]ecause postage and mail costs are not provided for in [section] 1920, such costs are disallowed"); *Frost v. McNeilus*, No. 8:14-CV-81-T-24-MAP, at *2, 2015 WL 1730244 (M.D. Fla. Apr. 14, 2015) (finding unrecoverable the costs of plaintiff's counsel's "hotel stay during the trial"). The Court therefore declines to award them.

In sum, the Court awards $1630.21 in costs.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

(1) Mr. Nilaj's Motions for Default Judgment (Dkt. 66; Dkt. 71) are **GRANTED-IN-PART and DENIED-IN-PART**.

18

(2) Default judgment is entered against Mr. Ortega and DO Enterprises, and in favor of Mr. Nilaj, in the amount of $21,989.58 (including the return of Mr. Nilaj's $10,000) in damages and $1,630.21 in costs.

(3) Default judgment is entered against MGO and in favor of Mr. Nilaj in the amount of $2452.50 in damages and $1,630.21 in costs.

(4) There will be no double recovery of the total amount of damages and costs awarded, which amount to $21,989.58 and $1,630.21, respectively.

(5) Mr. Nilaj shall return any equity he obtained in DO Enterprises through the Ownership Agreement to Danny Ortega and DO Enterprises.

(6) For the total judgment of $21,989.58, which shall bear interest at the interest rate of 0.10% per annum, pursuant to 28 U.S.C. § 1961, all for which let execution issue.

(7) The Clerk is directed to close this case.

**DONE AND ORDERED** at Tampa, Florida, on July 15, 2024.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record